## COMMONWEALTH *vs.* BARNABAS RICE.

The fifth section of the by-law of the city of Boston, passed on the 2d of March 1843, for the regulation of Faneuil Hall Market, is valid, which provides that " no inhabitant of said city, nor any inhabitant of any town or city, whose dwelling-house is less than twenty miles distant from said market, shall, at any time, without the permission of the clerk of said market, occupy any stand therein, with cart, wagon, sleigh, or otherwise, for the purpose of vending any articles within the limits of said market, unless he shall, before selling or offering to sell such articles, satisfy the said clerk, when requested, that all the said articles are the produce of his own farm, or of some farm not more than three miles distant from his dwelling-house."

It is a violation of said section, for an inhabitant of Boston to occupy a stand within the limits of the market, and there offer for sale articles which are the property of a person residing more than twenty miles from the market, as the agent of such person, and by his direction, without satisfying the clerk of the market, when requested, that the articles are the produce of such inhabitant's own farm, or of some farm not more than three miles distant from his dwelling-house.

A stand may be occupied, within the meaning of said section, by a person's having a box, within the limits of the market, containing articles for sale, and offering them for sale.

A complaint for violation of said section is sufficient, if it allege that the defendant, without satisfying the clerk, &c., occupied a stand, within the limits of the market, with a box, for the purpose of vending articles there, without alleging that the box was of such a size as to be capable of being used as a stand.

The first section of said by-law does not require that the clerk of the market, before entering a complaint for violation of the regulations of the market, should have the direction of the mayor and aldermen to make such complaint.

THE following complaint against the defendant was made to the police court of the city of Boston, on the 22d of November 1843, by Daniel Rhodes, clerk of Faneuil Hall Market: " That the said Rice, on the 18th of November 1843, at said Boston, with force and arms, being an inhabitant of Boston, did, w thout the permission of the said Rhodes,

then the clerk of the Faneuil Hall Market in said city, on the sidewalk of South Market Street, the same being within the limits of said market, occupy a stand with a box, for the purpose of vending sundry articles within the limits of said market; and that said Rice did then and there offer certain articles for sale; and that, before offering said articles for sale, said Rice did not satisfy the said Rhodes, though requested by said Rhodes so to do, that all the said articles, so offered for sale, were the produce of his own farm, or of a farm not more than three miles distant from the dwelling-house of said Rice: And the said Rice, being thereupon directed by said Rhodes to remove, with said box, without the limits of said market, in half an hour, did not so remove, but did there remain, for more than one hour after being so ordered to remove; contrary to the form of the statute of said Commonwealth and the by-law of said city."

The by-law, on which the complaint was framed, is recited in the opinion of the court.

The defendant was convicted and fined by the police court, and appealed to the municipal court. At the trial in the latter court, "there was evidence that the defendant, at the time named in the complaint, offered for sale, in South Market Street, some poultry contained in a box; and that, being directed by said Rhodes, clerk of Faneuil Hall Market, to remove out of the limits of said market, he neglected so to do. It was admitted by the attorney for the Commonwealth, that the poultry was, at the time it was so offered for sale, the property of a person residing in New Hampshire, and more than twenty miles from Boston; and there was evidence tending to show that the defendant was selling as agent of said owner, and by his express direction. The defendant's counsel requested the court to instruct the jury, that if they were satisfied that, in offering said poultry for sale, he was acting as agent, and by the direction of a person residing more than twenty miles from Boston, to whom the poultry, at the time it was so offered, belonged, they should find a verdict of not guilty; that the Commonwealth must

prove that the clerk of said market, at the time he ordered the defendant to remove, was acting under the express direction of the mayor and aldermen of the city; that being in South Market Street with a box, and offering poultry for sale therefrom, according to the allegation in the complaint, and the proof offered, was not occupying a stand, within the meaning of the fifth section of the city by-law of March 2d 1843, and that, therefore, the Commonwealth must prove that the defendant was incumbering some place within the limits of said market; and that the fourth and fifth sections of said by-law were void for unreasonableness, and because in restraint of trade. The court declined giving the instructions requested, but instructed the jury that the by-law was valid; that if the defendant was an inhabitant of Boston, or of any place within twenty miles of Boston, it was no defence that he was acting as the agent, and by the instruction, of an absent person residing more than twenty miles from Boston, who was, at the time the poultry was offered for sale, the owner thereof.'

The jury found a verdict of guilty, and the defendant alleged exceptions to the instructions of the court. He also filed, in this court, a motion in arrest of judgment.

*Dodge,* for the defendant.

*S. D. Parker,* for the Commonwealth.

SHAW, C. J. This complaint was founded upon a by-law of the city, passed March 2d 1843. The first and second sections provide for the appointment of a clerk of the market, and prescribe his duties. The third fixes the limits of the market, which include North and South Market Streets. The fourth regulates the standing of carts, &c., and the removal of horses, cattle and other incumbrances. Section fifth is the one on which the complaint is founded. It provides that "no inhabitant of the city of Boston, nor any inhabitant of any town or city, whose dwelling-house is less than twenty miles distant from said Faneuil Hall Market, shall, at any time, without the permission of said clerk, occupy any stand therein, with cart, wagon, sleigh *or otherwise,* for the purpose of vending any articles within the limits of said market, unless he

shall, before selling or offering to sell such articles, satisfy the clerk, when thereunto requested, that all the said articles are the produce of his own farm, or of some farm not more than three miles distant from his own dwelling-house ; and every person, occupying any such stand, contrary to these provisions, shall, when directed by the said clerk, forthwith remove without the limits of said market."

The defendant's counsel, on the trial, prayed the court to give various instructions in matter of law, which the judge declined, but instructed the jury, that if the defendant was an inhabitant of Boston, or any place within twenty miles, it was no defence that he was acting as the agent and under the instruction of a person residing more than twenty miles distant, who was, at the time, owner of the poultry offered for sale.

1. The first exception taken is, that this instruction was wrong, and that the law, in effect, authorizes persons, living more than twenty miles distant, to use these premises, without complying with the terms of the by-law ; and that what they have a right to do themselves, they have a right to commission another to do. The court are of opinion that the instruction was right, and that the exception cannot be sustained. It is only by implication, that persons living more than twenty miles distant, or the persons they employ, living more than twenty miles distant, can stand in the market. The maxim, that whatever one is authorized to do himself, he may do by attorney, has its limitations ; and one is, when it is expressly prohibited by law. Here it is expressly prohibited ; "no inhabitant," &c. "shall occupy any stand," &c. The terms are clear ; and we think the object of the by-law is obvious. It is founded on the old policy of the law inhibiting forestalling. It is intended to secure these stands for persons coming to market, with provisions, from a distance, or persons coming to sell their own or their neighbors' produce. The very purpose of the enactment is, to secure a dealing between the producer and the consumer, without the intervention of any intermediate agent. The next section of the by-law (§ 6)

strongly confirms this construction. It provides, "when any person, lawfully occupying any stand in the streets, within the limits of said market, shall employ any servant or agent to sell, in said market, any articles for him, or on his account, such servant or agent shall not sell any articles upon account of any other person than the person so employing such servant or agent; nor shall any person, lawfully occupying a stand, as aforesaid, be permitted to purchase any provisions or other articles, within the limits of said market, for the purpose of selling the same therein, nor to sell, within said limits, any provisions or other articles, for or on account of any person not lawfully entitled to a stand within the same." If, therefore, the owner of produce, living more than twenty miles from Boston, wishes to send his articles to the Boston market, and does not choose to come himself, or send his own agent, he must employ a factor who may lawfully sell on commission, without occupying the free stands intended for the encouragement and accommodation of farmers, gardeners and other producers, coming to market with their own produce.

2. Another exception is, that the clerk is to exercise his authority under the control of the mayor and aldermen, and that it does not appear that the mayor and aldermen directed this complaint. The first section of the by-law provides that " the clerk shall, under the control of the mayor and aldermen, have the care and superintendence of said market, and it shall be his duty to preserve order in said market, and to execute and carry into effect all the regulations, orders and ordinances, which may be duly made; and it shall be his duty to enter complaints for any violations of said regulations," &c. This gives the general control to the mayor and aldermen, but does not require their direction to each act of the clerk. On the contrary, it is expressly made his duty, by the by-law itself, to preserve order, &c., and especially to enter complaints for any violations of the orders, &c. for the regulation of the market.

3. It was insisted, that although having a box within the imits of the market might be complained of, as an incum-

22 *

brance, under § 4, it could not be charged as occupying a stand, within § 5. We think the act might have been complained of under either section, according to circumstances. It might be an incumbrance, and it might also occupy a stand for the sale of provisions. If the latter was the actual use and purpose, and if a stand could be so occupied, it is a case within § 5, whether within § 4 or not.

4. The next objection is plausible, but we think not sound. It is insisted, that a box cannot come within the enumeration, in the fifth section, of modes of occupying a stand. The words are, " with cart, wagon, sleigh *or otherwise,* for the purpose of vending," &c. ; and it is urged that, under a well known maxim of construction, the word "otherwise " can only include things *ejusdem generis,* and that, as all the articles in the enumeration are vehicles, capable of being moved by horses or cattle, it cannot include a box.

The maxim is no doubt a sound one, but it is to be applied, with discrimination, to the subject matter, with a view to accomplish the purposes of the act. The purpose of the by-law was, to prohibit the use of a part of the market as a stand for the sale of provisions, with a receptacle capable of holding and displaying such provisions. Cart, wagon and sleigh, are specified, but it is cart, wagon or sleigh, with the horse removed, and used only for the time being as such receptacle. We believe that the species of sleigh commonly used for carrying provisions to market is usuallly called a lumber-box. Now the point of likeness to be regarded is, not the capacity of being moved by a horse, but the capacity of being used to hold and display provisions for sale. A box, therefore, of suitable dimensions to hold and display provisions for sale, is an article *ejusdem generis,* within the clause of the by-law. The same rule, we think, would apply to a bench, stall, or table, used for the like purpose.

5. It is contended that the by-law is contrary to common right, in restraint of trade, against public policy, unreasonable and void. But the court are of opinion that the by-law is not open to these objections. The city have, at great expense

provided these accommodations; and they have a right so to control them, as best to promote the welfare of all the citizens. And we think they are well calculated to promote the public and general benefit, as well of the country as the city, by securing free and convenient stands for actual producers, and those who reside at a distance.

6. The last objection is, that the complaint is defective, in stating that the defendant occupied a stand with a box, which might be a small box, incapable of being so used. This objection is not tenable, unless the court can say that no box of any dimensions can be so used as to occupy a stand; which we certainly cannot say, because a large box may be, and often is so used. If, in fact, it was a small box, as it was suggested, in the argument, that it might be, it was rather matter of evidence, than of averment, that it was a small box, not adapted to the purpose of holding provisions for sale. The court should have been requested to charge that it was insufficient to support the averment in the complaint, or to leave it to the jury, on the evidence, with proper directions.

These views, it is believed, embrace all the points arising as well on the motion in arrest of judgment as on the bill of exceptions. *Exceptions overruled.*